IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL QUILLION LEACH, FF-4077,  )
    Petitioner,  )
      )
    v.  )   2:09-cv-964
      )
MICHAEL D. KLOPOTOSKI, et al.,  )
    Respondents.  )

MEMORANDUM and ORDER

Mitchell, M.J.:

Carl Quillion Leach, an inmate at the State Correctional Institution at Dallas has

presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in

forma pauperis. For the reasons set forth below, the petition will be dismissed and because

reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability

will be denied.

Leach is presently serving a life sentence imposed following his conviction, by a jury, of

first degree murder, firearm not to be carried without a license, and tampering with evidence, at

No. 2907 of 2001 in the Court of Common Pleas of Westmoreland County, Pennsylvania.[1] This

sentence was imposed on January 3, 2003.[2]

An appeal was taken to the Superior Court in which the questions presented were:

1. Whether the trial court erred in refusing to suppress the defendant's statements
and other evidence derived from his illegal arrest when Miranda warnings given

---

[1] See: Petition at ¶ 1-6.

[2] See: Attachment 1 to the answer of the Commonwealth at p.26a.

to the defendant failed to purge the taint of his unlawful arrest?

2. Whether the trial court erred in admitting the defendant's cell phone records under the inevitable discovery and independent source doctrines when the Commonwealth failed to prove that the evidence would have been discovered despite the initial taint of the defendant's illegal arrest?

3. Whether the trial court erred in failing to suppress the defendant's statements rendered over six hours after his initial detention when the defendant's continued custody in those six hours constituted an [illegal] arrest?

4. Whether the trial court erred in failing to suppress evidence acquired through the execution of various search warrants when the warrants were issued in reliance of illegally obtained evidence and omitted material facts that would have undermined the finding of probable cause?

5. Whether the trial court erred in failing to suppress evidence acquired through the execution of search warrants when the warrants were executed in a wholly unlawful fashion?

6. Whether the trial court erred in admitting Tiffany West's preliminary hearing testimony when the defendant lacked a full and fair opportunity to cross examine West concerning her undercover conversations with the defendant and her mental health problems which resulted in her suicide?

7. Whether the trial court erred in restricting the cross examination of Kirk Wynn regarding his arrest on drug charges where the questioning would have reflected Wynn's bias to testify favorably for the Commonwealth at trial?

8. Whether the trial court erred in instructing the jury that it could infer the defendant's consciousness of guilt based on evidence that he gave statements in variance with each other in connection with the incident when such an instruction served to diminish the Commonwealth's burden of proof?

9. Whether the verdict was contrary to weight of the evidence and contrary to law?[3]

On October 20, 2004, the Superior Court affirmed the judgment of sentence.[4]

_____

[3] See: Attachment 2 to the answer of the Commonwealth at p.74a.

[4] See: Attachment 5 to the answer of the Commonwealth at pp.196a-221a.

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which

the questions presented were:

> 1. Whether statements made as a result of an illegal search and seizure must be suppressed when subsequent <u>Miranda</u> warnings failed to purge the taint of an unlawful arrest?
>
> 2. Whether evidence may be admitted pursuant to the inevitable discovery and independent source doctrines when the Commonwealth failed to establish the evidence would have been discovered despite the initial taint of the illegal arrest?
>
> 3. Whether evidence acquired through the execution of search warrants must be suppressed when the warrants were executed in a wholly unlawful fashion?
>
> 4. Whether the trial court erred in admitting the testimony of a deceased witness when there was no full and fair opportunity to cross examine the witness regarding serious matters impacting her credibility?
>
> 5. Whether the trial court erred in restricting the cross examination of a critical government witness regarding his recent arrest on drug charges where the questioning would have reflected the bias of the witness to testify favorably for the Commonwealth?
>
> 6. Whether the trial court erred by instructing the jury that it could infer the defendant's consciousness of guilt when such an instruction served to diminish the Commonwealth's burden of proof?
>
> 7. Whether the verdict was against the weight of the evidence when the evidence established the defendant was not at the scene when the murder was committed?[5]

On July 26, 2005, leave to appeal was denied.[6]

On September 26, 2006, a post-conviction petition was filed.[7]  The latter was denied on

---

[5] See: Attachment 5 to the answer of the Commonwealth at p.229a.

[6] See: Attachment 7 to the answer of the Commonwealth at p.328a.

[7] See: Attachment 1 to the answer of the Commonwealth at p.32a.

October 15, 2007.[8]

An appeal was filed in the Superior Court in which the questions presented were:

1. Whether the Honorable trial court erred in not finding that trial counsel rendered ineffective assistance of counsel in failing to object to the recorded conversation between Kirk Wynn and the defendant?

2. Whether the Honorable trial court erred in not finding that trial counsel rendered ineffective assistance of counsel in not informing that court that he could not locate Amanda Hershey, in conjunction with failing to object to the prosecuting attorney's comments during closing argument about the failure of the defense to have presented any evidence that the defendant was actually on his cell phone for 23 minutes during the time span that the Commonwealth posits the murder must have occurred?[9]

On September 3, 2008, the denial of post-conviction relief was affirmed.[10]

A petition for allowance of appeal was filed in which the sole issue presented was:

1. Whether the Honorable Superior Court erred in affirming the PCRA court's finding that trial counsel rendered effective assistance of counsel despite failing to object to the recorded conversation between Kirk Wynn and the defendant?[11]

On April 1, 2009, leave to appeal was denied.[12]

The instant petition was executed on July 19, 2009. In it petitioner contends he is entitled to relief on the following grounds:

I.. Police lacked probable cause to enter his hotel room without a warrant.

II. That as a result of this illegal entry an illegal warrantless search of petitioner's

---

[8] Id. at p.42a.

[9] See: Attachment 8 to the answer at p.336a.

[10] See: Attachment 9 to the answer at p.369a.

[11] See: Id at p.380a.

[12] See: Id. at p. 409a.

room and car occurred.

III. That although taken to the police station and held for eleven hours, he was never informed that he was free to leave; that the trial court determined that this action by the police constituted an arrest; that he was questioned without being informed of his Miranda rights; that after his rights were explained to him at 3 P.M. he was ultimately released from custody but advised not to depart the community.

IV. That ultimately informing the petitioner of his Miranda rights did not remove the taint of the police's illegal entry into his hotel room and car and search those premises.

V. That he was not arraigned within six hours of his being taken into custody as required by Pennsylvania law and thus any subsequent statements he made should not have been introduced against him. And that this allegedly illegal detention should have barred the use of his cell phone records and numbers found in his car.

VI. That as a result of these violations his present incarceration is illegal.[13]

It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:

(1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

---

[13] See: Petitioner's memorandum incorporated with his petition.

shall not be counted toward any period of limitation under this subsection.

In the instant case, the Pennsylvania Superior Court affirmed the direct appeal on October 20, 2004, and leave to appeal to the Pennsylvania Supreme Court was denied on July 26, 2005. In Kapral v. United States, 166 F.3d 565 (3d Cir.1999), the Court noted that in the absence of the filing of a petition for discretionary review, the judgment becomes final when the time period in which to seek that review expires. Thus, the petitioner's conviction became final on October 24, 2005. The effective date of the Antiterrorism and Effective Death Penalty Act which imposed the one year statute of limitations is April 24, 1996 and thus it is applicable here. The petitioner did not seek post-conviction relief until September 26, 2006, or eleven months after he could have sought relief in the United States Supreme Court. That petition was denied and the denial of post-conviction relief was affirmed by the Superior Court and leave to appeal to the Pennsylvania Supreme Court was denied on April 1, 2009. The instant petition was executed on July 19, 2009. Thus, combining the delay in initially seeking post-conviction relief with the delay in seeking relief here, approximately fourteen and a half months expired which is more that the one year period in which to seek relief has expired, and the petition here would be time barred, if the District Attorney did not waive this issue.[14]

Thus, the next issue which needs to be addressed is that of exhaustion.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that

---

[14] See: ¶ 24 of the answer.

before a federal court will review any allegations raised by a state prisoner, those allegations

must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411

U.S. 475 (1973); Braden v.  30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973);

Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would

be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez,

supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir.  1995).

If it appears that there are available state court remedies, the court must determine

whether a procedural default has occurred. If a procedural default has occurred, the court must

determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage

of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d

Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413

(2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions
> is satisfied - the state-court adjudication resulted in a decision that (1) "was
> contrary to ... clearly established Federal law, as determined by the Supreme Court
> of the United States," or (2) "involved an unreasonable application of ... clearly
> established Federal law, as determined by the Supreme Court of the United
> States." Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In Coleman v.Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

In the instant case, the Commonwealth argues and we concur that the only issues which the petitioner raised in the appellate courts of the Commonwealth and which he seeks to raise here are Nos. 2,3 and 4. The remaining issues have been procedurally defaulted and are not properly before this Court.

The background to this prosecution is set forth in the October 20, 2004 Memorandum of the Superior Court citing to the trial court's opinion:

> The time line of events on the evening of the homicide can be reconstructed loosely as follows. At approximately 9:06 to 9:07 p.m., Officer Robert Wilson of the West Newton Borough Police Department drove down Orr Road in Rostraver Township, past the location where the body of the homicide victim was eventually discovered approximately twenty minutes later.  Officer Wilson did not see any body on the roadside when he drove past for the first time.

Officer Wilson was dispatched to Orr Road at 9:26 p.m. after Renee Patterson, a woman who resided in the vicinity, placed a telephone call to 9-1-1, stating that she "saw a body laying along side of the road, was not able to see the head or the shoulders that was [sic] under the guardrail that is along the road there."

Richard Bradley, who lived in close proximity to the site where the shooting apparently occurred, testified that he heard shots repeatedly fired that evening. In attempting to reconstruct the time when he heard the shots fired, he testified that he had purchased items from a Lowes story at 7:71 p.m., and produced the date and time stamped receipt.  He then proceeded with his wife to another store, briefly shopped, and then drove home. He estimated that he arrived home at approximately 8:30 p.m., whereupon he embarked on a project in his garage.

Mr. Bradley was not paying specific attention to the time, so he did not know what time it was when he heard the shots fired. At 9:50 p.m., a neighbor telephoned him to tell him about the body that was discovered on the road nearby. Looking back on the evening's events, Bradley guessed that it must have been between 9:15 and 9:30 p.m. when he heard the shots fired, but he admitted uncertainty.

Kirk Wynn had spent the better part of the day with the Defendant. Early in the evening, Terra Groff, the victim, joined Wynn and the Defendant, and the three made plans to spend the evening together. At some point, Wynn left Groff and the Defendant at a motel while he visited his girlfriend who lived in Monessen. While en route back to the motel, Wynn telephoned a friend at 8:45 p.m.  After returning to the motel, Wynn loaned his cell phone to the Defendant, who telephoned a friend they hoped to meet that evening. This call was made at 8:54 p.m.

Based upon the foregoing, the Defendant contends that Wynn was an airtight alibi witness for the Defendant, establishing that the Defendant was in the presence of Wynn, and at a different location, during the time that the shooting occurred. However, the Commonwealth presented evidence that questioned the absence of Groff's body on the roadside when Officer Wilson drove down Orr Road for the first time. Orr Road was a rural country road without overhead street lights. The body, when found, was positioned with the head underneath a guardrail and only the legs sticking out. Mr. Patterson, who was in the car with Renee Patterson, testified that had Mrs. Patterson not drawn his attention to the body, he may not have seen it.  Based upon this testimony concerning the placement of the body and the lighting conditions, a fact-finder could easily and reasonably conclude that the officer simply did not notice the body on Orr Road at 9:00 p.m. even though it was there.

Furthermore, Bradley's testimony concerning the time that he heard the shots was sufficiently vague such that a fact-finder could have reasonably concluded that the shots were fired at a time when Wynn and the Defendant were apart. The foregoing difficulties in establishing the time of the homicide in relation to the time that the Defendant was in the presence of another, Kirk Wynn, coupled with the other damning circumstantial evidence - the Defendant's weapon found near the crime scene, the Defendant's motive to seek retribution against the victim, and the fact that the victim was last seen alive with the Defendant - all support a finding that the Defendant is guilty of the homicide.[15]

The first issue which we examine, is Leach's claim that as a result of the illegal entry into his hotel room an illegal warrantless search of his room and car occurred. In addressing this matter the Superior Court in the direct appeal proceedings observed:

> The Commonwealth does not challenge the trial court's determination that Appellant's initial arrest was illegal. The Commonwealth also does not challenge the trial court's decision to suppress certain evidence gathered during the initial search of Appellant's hotel room and automobile. The sole point of contention between the parties is the admissibility of statements that Appellant made after the police read him his rights pursuant to Miranda...[16]

In Stone v. Powell, 428 U.S. 465, 494 (1976), the Court held:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial

Clearly, in the state court proceedings, it was determined that the initial entry into the petitioner's hotel room and car were illegal resulting in the suppression of evidence originating from these sources. Thus, not only did the petitioner have a full and fair opportunity to litigate this issue, but he essentially prevailed on it. Thus, the determination of the state courts was not contrary to clearly established federal standards and this claim does not provide a basis for relief

---

[15] Attachment 5 to the answer at pp. 196a-198a.

[16] Id. at pp. 201a-202a,

here.

The next issue which the petitioner raises here, was whether his rights under <u>Miranda</u>

were violated at the time of his arrest. The factual background to this allegation is set forth in the

October 20, 2004 Memorandum of the Superior Court which observed:

> Upon opening the door to Appellant's hotel room at approximately 11:45 a.m. on December 8, 2000, the police asked Appellant to lie down on the floor. While Appellant was on the floor, the police handcuffed him.  The police swept the hotel room and determined that there was no threat to their safety.  They asked Appellant several questions and they uncuffed him and explained that he was not under arrest. Appellant was in handcuffs for a few minutes.
>
> Subsequently, the police asked Appellant if he would come to the police station to discuss his relationship with the victim, and Appellant agreed.  Appellant was not restrained and was left unguarded in an interview room for a period of time while he was at the police station.  At 2:59 p.m., the police read Appellant his **Miranda** rights and told him he was free to leave if he chose.  Appellant indicated that he understood his rights and agreed to speak to the police.  He never asked to leave (record references omitted).[17]

It is clear that the petitioner was escorted to the police station at about noon and was

advised of his <u>Miranda</u> rights about three hours later. In <u>Taylor v. Alabama</u>, 457 U.S. 691 (1982)

the Court observed that an unreasonable delay, in that case six hours, after an illegal arrest and

prior to a statement being made tainted the statement. In the present case, the facts as set forth by

the state court demonstrate that the petitioner was not " in custody" and free to leave the police

statement prior to being advised of his <u>Miranda</u> rights. In addition, all evidence seized and any

statements made prior to the petitioner being advised of his <u>Miranda</u> rights were suppressed by

the trial court.[18] It is only those statements made by the petitioner after being advised of his rights

---

[17] See: Id. at pp. 203a-204a.

[18] See: Brief of appellant, Attachment 2 at p. 88a.

that the trial court admitted into evidence.[19] The trial court and the Superior Court concluded that

the intervention of these warnings broke the chain from the illegal entry and "arrest".[20]

The fundamental right set forth in Miranda is that until such time as an individual is made

aware of his constitutionally protected rights and makes an intelligent waiver of those rights, any

custodial statements he makes cannot be used against him. Miranda v. Arizona, 384 U.S. 436,

492 (1966). See: United States v. Brownlee, 454 F.3d 131, 146 (3d Cir. 2006). In the instant

case, the state courts examined the record, and concluded that all pre-Miranda evidence had to be

suppressed, and that the evidence secured after the petitioner had been advised of his rights was

sufficiently removed from the taint of the initial proceedings and therefore admissible. Thus,

because this determination by the state courts is clearly not contrary to clearly established federal

case law, the claim does not provide a basis for relief here.

The petitioner's final argument is that the taint of the police's illegal entry was not

vitiated by his subsequently being advised of his Miranda rights. As previously noted, the state

courts excluded all evidence obtained prior to the petitioner being informed of his rights.

Specifically, in this regard the petitioner argues that the initial seizure of his cell phone, and the

subsequent suppression of evidence secured from that phone should have been applied to

evidence garnered from that phone after he had been advised of his rights.[21] In reviewing the

record, the Superior Court related:

The record reflects that Appellant himself gave the police his cell phone number

---

[19] Id.

[20] See: Attachment 5 at pp.204a-206a.

[21] See: Id. at p.206a.

during one his interviews on December 8, 2000. Since we have already concluded that the trial court properly denied suppression of his statements to the police [post-<u>Miranda</u>], it is clear that the statements were an untainted source of information that led the police to Appellant's cell phone records. The police also had information from [another individual] that led them to Appellant's cell phone number.... Since the police did not use information obtained as a result of Appellant's illegal arrest in support of their warrant for Appellant's cell phone records, Appellant's ... argument fails.[22]

What the petitioner appears to be arguing here, is that information gleaned from his cell phone constituted "fruits of the poisonous tree" and was thus excludable under <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963). The latter requires a voluntary act to mitigate the taint of the earlier unlawful activity. <u>Knapp v. Texas</u>, 538 U.S. 626, 632 (2003).

After examining the record, the Pennsylvania courts concluded that not only was there independent evidence to support the seizure of the petitioner's cell phone, but that he voluntarily provided the police with information regarding the phone following being advised of his rights. Accordingly, the determination of the Commonwealth courts is not contrary to federal case law as determined by the Supreme Court and this issue likewise does not provide a basis for relief here.

Because the issues which the petitioner seeks to raise here are either procedurally defaulted or not decided by the state courts in any matter contrary to applicable federal case law, the petition is without merit. For this reason, the petition of Carl Quillion Leach for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

_____

[22] Id. at p.207a.

ORDER

AND NOW, this 28th day of October 2009, for the reasons set forth in the foregoing

Memorandum, the petition of Carl Quillion Leach for a writ of habeas corpus is dismissed and

because reasonable jurists could not conclude that a basis for appeal exists, a certificate of

appealability is denied.

s/ Robert C. Mitchell
United States Magistrate Judge